HUGHES (UNITED STATES v.). See Cases Nos. 15,416–15,419.

HUGO v. The QUICKSTEP. See Case No. 11,509.

HUGUENOT, The (NORTH SHORE S. I. FERRY CO. v.). See Case No. 10,330.

HUGUNON (JACQUETTE v.). See Case No. 7,169.

=======

## Case No. 6,847.

HUIDEKOPER v. BUCHANAN COUNTY.

[3 Dill. 175;[1] 1 Cent. Law J. 177.]

Circuit Court, W. D. Missouri. 1874.

COUNTY BONDS—LEGISLATIVE AUTHORITY — PREVIOUS ELECTION—RECITAL IN BONDS.

Where legislative authority is conferred upon a municipal or public corporation to issue bonds on the sanction of the voters to be given at an election, and the officers of the corporation are by the law to decide whether the requisite sanction has been given, and they issue bonds which recite it, no irregularity in the manner of appointing the judges of the election, or in submitting the question, is a defense to the bonds thus issued, when in the hands of bona fide holders for value, without actual notice.

[Cited in Nicolay v. St. Clair County, Case No. 10,257.]

This is an action [by F. W. Huidekoper against Buchanan county] upon coupons to bonds issued by the county court of the county of Buchanan in payment for stock subscribed to the St. Louis & St. Joseph Railroad Company. The answer sets out all the orders of the county court, from which it appears that on the 21st day of February, 1868, the county court ordered to be submitted to a vote of the qualified voters, at an election to be held on a specified day in April, 1868, the proposition whether the county court "should subscribe for 4,000 shares of the capital stock of the St. Louis & St. Joseph Railroad Company, amounting, in the aggregate, to $400,000, upon the terms following: Said subscription to be paid for in the bonds of the county at par, payable twenty years after the date of their issue," etc. Then follow conditions that the bonds shall only issue in installments as the work on the road within the county shall progress. The county court appointed certain persons named, "judges of the election to be holden on, etc., for the purpose of submitting to a vote of the taxable and qualified voters of the county (the question of) the subscription of $400,000 to build a railroad known as the St. Louis & St. Joseph Railroad." The records show that the clerk of the county court "brought into court the returns of the votes cast, certified according to law," showing "that there were cast for the subscription to the St. Louis & St. Joseph Railroad, 1,968; and against it, 520 votes." On the 13th day of April, 1868, the county court made an order of record reciting that "whereas, it appears, to

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

the satisfaction of the court, that two-thirds of the qualified voters of Buchanan county, at said special election, held therein as aforesaid, did assent to said subscription of 4,000 shares to the capital stock of the St. Louis & St. Joseph Railroad Company; therefore, it is ordered by the court that the county court of Buchanan county subscribe for and take 4,000 shares, to be paid for according to the order of this court, made on the 21st day of February, 1868." Subsequent orders of the court recite that the subscription was made, that the company complied with the terms and conditions which would entitle it to the bonds, and that the bonds were accordingly, from time to time, executed and delivered to the company to the full amount, in all, of $400,000. The record also shows that taxes were levied to raise the means to pay the interest on these bonds from time to time, and interest ordered to be paid until January 21st, 1873, when the county court directed the treasurer "not to pay interest due on the bonds of the county issued to the St. Louis & St. Joseph Railroad Company until further orders from the court." To this answer the plaintiff demurs.

Joseph Shippen and T. K. Skinker, for plaintiff.

Ensworth & Young, for the County.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

DILLON, Circuit Judge. The answer shows that there was an election held to enable the voters of the county to determine whether the county court should subscribe to the stock of the St. Louis & St. Joseph Railroad Company, and pay therefor in the negotiable bonds of the county; that more than two-thirds of the voters voting at such election were in favor of the proposition; that the county court thereupon made the subscription, and from time to time issued the bonds as the railroad company became entitled thereto by the terms of the submission. It is not denied in the answer that the plaintiff is a bona fide holder of the coupons in suit.

The counsel for the county contends that the bonds in question are void for three reasons: (1) That the county court had no power to appoint judges of the special election to be held on the 7th day of April, 1868, to decide upon the question of subscription, but that such power, under the act of March 21, 1868 (Laws Mo. 1868, p. 131, § 15), belonged to the board of registration. (2) That the question was ordered to be submitted to the "taxable and qualified voters" of the county, instead of the "qualified voters," as required by the constitution (article 11, § 14). (3) That the submission was not an unqualified one, but contained conditions. These conditions related to the manner in which the bonds should be issued in case the proposition carried, and required work

to a specified amount to be done by the company before it should become entitled to the delivery of an installment of the bonds. These conditions were in the interest of the county, and the orders of the county court show that they were complied with by the company.

It will be perceived that all of these objections relate to irregularities in the submission of the question to a vote of the people, and in the manner of appointing the judges of the election. It may be remarked that the record of the county court does not sustain the position of the counsel of the county that the submission was to the "taxable and qualified voters." On the contrary, the submission was to the qualified voters. The use of the words "taxable and qualified voters" occurs in that portion of the order appointing the judges of the election, and is recitative only of the order of submission, and its misrecital is a matter of no importance.

There is, therefore, really but one objection to the validity of these bonds left to be considered, and that is whether, if the defendant's counsel be right that the judges of election should have been appointed by the board of registration, this is a fatal defect. It is not necessary in this case to inquire whether if there had been no election whatever, the bonds could have been enforced against the county, notwithstanding the constitutional provision. Article 11, § 14. Here there was an election, and the proposition received, according to the determination of the county court entered upon its records, the assent of more than the requisite two-thirds of the qualified voters of the county.

Counsel have differed as to whether the decisions of the United States supreme court have gone so far as to hold valid bonds issued by the municipal or public officers without any election whatever having been held, when such an election is required as a condition precedent to the exercise of the power to subscribe for stock and issue bonds to pay therefor—and we are not required to examine or discuss that question. But beyond all doubt that court has time and time again decided that no such defect or irregularity as that which is here set up is available as a defense to the bona fide holder of such securities. The well-known doctrine of that court is that bonds, such as those here in question, are commercial paper, and when in the hands of an innocent holder no defense is available to the maker, except the want of power from the legislature to issue them.

It is not needful to examine the decisions of that court upon this subject. To show, however, that the doctrines announced in the early case of Commissioners of Knox Co. v. Aspinwall, 21 How. [62 U. S.] 539, and often re-affirmed, are still adhered to, we content ourselves by referring to the very recent cases of St. Joseph Tp. v. Rogers, 16

Wall. [83 U. S.] 644, and Kennicott v. Wayne Co., Id. 452, both decided at the December term, 1872. In the case first cited, Mr. Justice Clifford, summarizing the doctrines of the court on this subject, says: "Bonds, payable to bearer, issued by a municipal corporation to aid in the construction of a railroad, when issued in pursuance of a power conferred by the legislature, are valid commercial instruments; but if issued by such a corporation which possessed no power from the legislature to grant such aid, they are invalid, even in the hands of innocent holders. Such a power is frequently conferred to be exercised in a special manner, or subject to certain regulations, conditions or qualifications, but if it appears that the bonds issued show, by their recitals, that the power was exercised in the manner required by the legislature, and that the bonds were issued in conformity with those regulations and pursuant to those conditions and qualifications, proof that any, or all, of those recitals are incorrect, will not constitute a defense to the corporation in a suit on the bonds or coupons, if it appears that it was the sole province of the municipal officers who executed the bonds to decide whether or not there had been an antecedent compliance with the regulation, condition or qualification which is alleged was not fulfilled."

In the case last cited (Kennicott v. Wayne Co.), Mr. Justice Hunt, delivering the judgment of the court, said: "The following propositions may be considered as settled in this court: (1) If an election or other fact is required to authorize the issue of the bonds of a municipal corporation, and if the result of that election, or the existence of that fact is by law to be ascertained and declared by any judge, officer or tribunal, and that judge, officer or tribunal, on behalf of the corporation, executes or issues the bonds, with a recital that the election has been held, or that the fact exists or has taken place, this will be sufficient evidence of the fact to all bona fide holders of the bonds. Authorities, infra. (2) If there be lawful authority for the municipality to issue its bonds, the omission of formalities and ceremonies, or the existence of fraud on the part of the agents of the municipality issuing the bonds, can not be urged against a bona fide holder seeking to enforce them. Grand Chute v. Winegar, 15 Wall. [82 U. S.] 572; Commissioners of Knox Co. v. Aspinwall, 21 How. [62 U. S.] 539; Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 203; Moran v. Miami Co., 2 Black [67 U. S.] 722. (3) There must, however, be an original authority, by statute, to the municipality to issue bonds. Municipal corporations have not the power, except through the special authority of the legislature, to issue corporate bonds which will bind their towns; neither have they the power to sell or mortgage the lands belonging to such towns, without special authority. Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676."

To the same effect see, also, Grand Chute v. Winegar [supra], and the recent decision of the supreme court in the state of Missouri in Smith v. Clarke Co. (November term, 1873) 54 Mo. 58. The demurrer to the answer is sustained. Judgment accordingly.

[NOTE. The plaintiff several years later obtained a mandamus against the judges of the county court requiring them to pay the amount of his judgment. The power of the court to issue the writ was denied. Case No. 14.679.]

Decisions of Missouri supreme court are referred to in Thomas v. Scotland Co. [Case No. 13,909]. Subsequent decisions of United States supreme court made at the October term, 1874, announce the same doctrines.